John H. HOLLOWAY, Appellant,

v.

Dr. Donald B. BUTLER, et al., Appellees.

No. C14–82–485CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 10, 1983.

Rehearing Denied Dec. 8, 1983.

John H. Holloway, Houston, for appellant.

Thomas R. Beech, Houston, David H. Donaldson, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellees.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

SEARS, Justice.

John H. Holloway, Appellant, sued Appellees for libel. The trial court granted Appellees' Motion for Summary Judgment on the basis that the one year statute of limi-

tation for actions involving libel, TEX.REV. CIV.STAT.ANN. art. 5524 (Vernon 1958), had expired. We affirm.

■ The central issue in this case is whether Texas follows the "single publication rule" in cases involving mass media libel. As this particular issue has never been resolved by Texas courts, we now take the opportunity to adopt the following UNIFORM SINGLE PUBLICATION ACT:[1]

No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one edition or issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

In March, 1977, *Texas Monthly* published an article entitled "Oops," which was made the basis of this action. The article dealt with medical malpractice lawsuits as well as individual doctors and attorneys involved in them. The article charged that Holloway, a Houston attorney, filed frivolous medical malpractice lawsuits without investigating their merits, because he knew that insurance companies found it cheaper to settle such suits than to defend them. The article reported a specific instance in which Holloway, without the knowledge or consent of his client, sued a hospital and Donald Butler, M.D. That lawsuit was tried and all defendants were exonerated. Dr. Butler told a representative of *Texas Monthly* Holloway admitted that Dr. Butler had not committed malpractice, extended his hands and said, "No hard feelings?" Dr. Butler responded by suing Holloway for malicious prosecution.

As per magazine industry custom, *Texas Monthly* distributes, via the postal service and private delivery companies, copies of its issues to its subscribers and wholesalers in the month prior to the month indicated on the issue cover. The affidavits supporting the Motion for Summary Judgment established that this custom was followed in this case, and the distribution of the March 1977 issue occurred on February 17 and 18, 1977. However, by special order, some back issues were sold after February 22, 1977. Holloway filed his lawsuit on February 22, 1978, suing Mediatex Communications Corporation (owner of *Texas Monthly*), Donald Butler, M.D. (a source quoted in the article), Alan Waldman (author of the article), Michael R. Levy (publisher of *Texas Monthly*) and William Broyles, Jr. (editor of *Texas Monthly*).

Holloway's first three points of error, which we will address together, concern the single publication rule. Holloway urges that since this rule ostensibly has been rejected in Texas, the court erred in basing its decision on this rule and, that the statute of limitation governing his cause of action did not expire. We disagree.

An exhaustive search of case law both by this court and by the parties involved has revealed only two Texas cases dealing with the single publication rule. The first, *Renfro Drug Co. v. Lawson,* 138 Tex. 434, 160 S.W.2d 246 (1942), involved an action against a local retailer. The court stated that "[e]ach time a libelous article is brought to the attention of a third person, a new publication has occurred, and each publication is a separate tort. Thus, each time a libelous book or paper or magazine is sold, a new publication has taken place." *Renfro* is distinguishable because Renfro was a retail outlet for the sale of the magazine in question and sales took place daily over an extended period of time. Further, the *Renfro* court relied in part on RESTATEMENT OF TORTS § 578 (1938), which appeared to recognize a new cause of action

1. The American Law Institute composes all Uniform Acts as the suggested and majority approach for dealing with frequently recurring legal questions. It is up to the judiciary of each state to adopt each Act, as it sees fit, into the jurisprudence of that state.

each time a copy of a libelous publication was sold.

### § 578 Liability of Republisher.

Except as stated in § 581, one who repeats or otherwise publishes defamatory matter is liable to the same extent as though he had originally published it.

. . . . .

b. Republication of libel. Each time a libelous article is brought to the attention of a third person, a new publication has occurred, and each publication is a separate tort. Thus, each time a libelous book or paper or magazine is sold, a new publication has taken place which, if the libel is false and unprivileged, will support a separate action for damages against the seller. So too, each time a libelous article is reprinted or redistributed, a new publication is made and a fresh tort is committed. . . .

Since *Renfro* was decided § 578 has been supplanted by RESTATEMENT (SECOND) OF TORTS § 577A (1977).

### § 577A. Single and Multiple Publications

. . . . .

(3) Any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication.

(4) As to any single publication;

(a) only one action for damages can be maintained;

(b) all damages suffered in all jurisdictions can be recovered in the one action; and

(c) a judgment for or against the plaintiff upon the merits of any action for damages bars any other action for damages between the same parties in all jurisdictions.

Section 578 was based on the old English multiple publication rule stated in *Duke of Brunswick v. Harmer,* 14 Q.B. 185, 117 Eng. Rep. 75 (1849). This common law rule originated at a point in history which antedated the relatively recent phenomenon of simultaneous mass publication of printed matter.

*See Gregoire v. G.P. Putnam's Sons,* 298 N.Y. 119, 122, 81 N.E.2d 45, 47 (1948). It contemplated a single defamatory statement by one individual which was made to multiple people on various occasions—not widely and simultaneously distributed printed defamatory matter. *See Winrod v. Time, Inc.,* 334 Ill.App. 59, 61, 78 N.E.2d 708, 709 (1948). Additionally, the multiple publication rule: (1) all but ignored the policy of outlawing stale claims which underlies all statutes of limitations, *See Gregorie,* 298 N.Y. at 122, 81 N.E.2d at 47; (2) tolerated, if not encouraged, a multiplicity of suits, *see Buckley v. New York Post Corp.,* 373 F.2d 175, 180 (2d Cir.1967); and (3) created apportionment of damages, conflicts of laws and venue problems, *See* HARPER & JAMES, THE LAW OF TORTS p. 394 (1956). These considerations, plus the fact that the mass communication of a single defamatory statement constitutes, for all practical purposes, a single wrong, *See id.* at 395, prompted other jurisdictions to abandon the multiple publication rule in favor of the single publication rule.

The single publication rule was applied to distributors in the second Texas case dealing with the rule, *Stephenson v. Triangle Publications, Inc.,* 104 F.Supp. 215 (S.D.Tex. 1952). *Stephenson* involved a libel action against a publisher acting through an independent distributor. The court distinguished *Renfro,* and held that, in the absence of any contrary Texas decision on point, it would apply the single publication rule of other jurisdictions. *Id.* at 218. The court recognized the generally accepted single publication rule as applied to publishers, that publication is complete at the time the issue is mailed to subscribers and distributors if nothing further is done by the publisher. *Id.* The court then held that publication by the distributor was complete when the distributor received and distributed the consignment. *Id.*

Having considered the factors which led to the adoption of the single publication rule, we believe that rule is proper when applied to mass media publishers.

Having adopted the UNIFORM SINGLE PUBLICATION ACT, we must now determine exactly when a "publication," as used in the Act, occurred in order to pass upon Holloway's argument that the applicable statute of limitation had not expired. TEX. REV.CIV.STAT.ANN. art. 5524 (Vernon 1958).[2]

Holloway urges that *Stephenson, supra,* holds a publication is not complete until the time the magazine containing the allegedly libelous article is removed from circulation. Holloway also alleges each sale of a copy of the magazine after the initial distribution, whether in the original retail sale group or back issues, constitutes a republication. If these contentions were correct, Holloway could legitimately state that the statute of limitation had not run when he filed his claim on February 22, 1978, because the Houston Public Library displayed the issue in question on its racks until March 1977 and because an undetermined number of back issues have been sold since February 22, 1977. However, as we have pointed out, the court in *Stephenson* did not so hold. In fact, the *Stephenson* court pointed out that no claim of republication, reprinting or sending out additional copies was even made in that case. 104 F.Supp. at 218.

■ We hold that publication is complete on the last day of the mass distribution of copies of the printed matter. It is that day when the publisher, editors and authors have done all they can to relinquish all right of control, title and interest in the printed matter. Publication, however, does not encompass retail sales of individual copies or sales of back issues of the printed matter.

■ We recognize that courts in other jurisdictions have otherwise defined a publication, *see, e.g., Fleury v. Harper & Row Publishers, Inc.,* 698 F.2d 1022, 1027 (9th Cir.1983) ("first general distribution" in the case of a single integrated publication); *Winrod v. Time, Inc.,* 334 Ill.App. 59, 61, 78

N.E.2d 708, 709 (1948). We reject this view. However, we agree with some other jurisdictions which have explained what is not a publication. *See, e.g., Fleury,* 698 F.2d at 1028 (not the date on the cover of the printed matter); *McGlue v. Weekly Publications, Inc.,* 63 F.Supp. 744 (D.Mass.1946); *Winrod,* 334 Ill.App. at 63, 78 N.E.2d at 710 (not retail sale of individual copies or back issues).

■ The single publication rule, with the term "publication" so defined, provides ample time for a diligent plaintiff to pursue a cause of action for libel and also allows full recovery for any damages suffered. The trial judge or jury is free to consider the number of copies sold, including those sold as retail or back issues, as competent evidence bearing upon the amount of damages to be awarded. *See Winrod,* 334 Ill. App. at 63–66, 78 N.E.2d at 710–11; *Gregorie,* 298 N.Y. at 124, 81 N.E.2d at 48. Furthermore, we are not limiting a plaintiff to a single cause of action in the event the same information appears in separate printings of the same publication or in different publications. The single publication rule applies strictly to multiple copies of a libelous article published as part of a single printing.

■ Having found no error in the trial court's actions, we overrule points of error one, two and three.

Appellant's final point of error alleges that the discovery rule tolled the statute of limitation until he learned, or in the exercise of reasonable care should have learned, of the allegedly libelous statements.

■ Generally, a cause of action accrues when the legal injury occurs, regardless of whether the plaintiff is aware of the injury. *Robinson v. Weaver,* 550 S.W.2d 18 (Tex.1977). Thus, absent a legal excuse to toll the statute of limitation, it begins to run at the time the cause of action accrued. Upon occasion, the court is presented with

2. There shall be commenced and prosecuted within one year after the cause of action shall have accrued, and not afterward, all actions or suits in courts of the following description:

1. Actions for malicious prosecution or for injuries done to the character or reputation of another by libel or slander....

facts compelling application of the discovery rule and uses the rule to override the policies underlying statutes of limitation. *See, e.g., Hays v. Hall,* 488 S.W.2d 412 (Tex.1972) (negligently performed vasectomy); *Gaddis v. Smith,* 417 S.W.2d 577 (Tex. 1967) (foreign object left in patient's body); *Grady v. Faykus,* 530 S.W.2d 151 (Tex.Civ. App.—Corpus Christi 1975, n.r.e.) (excessive radiation treatment). As stated by the Texas Supreme Court in *Robinson* the discovery rule is applied when the plaintiff does not have the ability to know of the negligent act. 550 S.W.2d 20–21. Neither the facts of this case nor cases cited by Appellant support the proposition that the discovery rule should apply in this case. Furthermore, we cannot agree with this proposition in the context of mass media libel.

Holloway cites *Armstrong v. Morgan,* 545 S.W.2d 45 (Tex.Civ.App.—Texarkana 1976, no writ) (quoting *Kelley v. Rinkle,* 532 S.W.2d 947 (Tex.1976)), and *Citizens State Bank v. Shapiro,* 575 S.W.2d 375 (Tex.Civ. App.—Tyler 1978, writ ref'd n.r.e.), for the proposition that the discovery rule applies in libel cases. The facts of those cases are easily distinguished from the case at bar. *Armstrong* involved a medical report of the Appellant's health which allegedly contained libelous statements that caused him to lose his job. 545 S.W.2d at 46. The court noted that since the summary judgment proof did not show as a matter of law that the Appellant knew or should have known more than one year before he filed suit that the report existed, summary judgment was an improper method of disposing of the case. *Id.* at 47. However, the court did not foreclose the alternative of using the "publication" rule which we apply here, in lieu of the "discovery" rule; rather, it stated in *that particular case* it was "more reasonable" to apply the discovery rule. *Id.*

Our case is not analogous to *Armstrong,* where apparently the single copy of the medical report was sent to the Appellant's superior who filed it before Appellant ever saw it. We are not faced with a secret report hidden from view. The allegedly libelous statement in this case appeared in hundreds of thousands of copies of *Texas Monthly.* Indeed Holloway himself subscribed to *Texas Monthly. Citizens State Bank* also provides no relief to Holloway because in that case the party admitted having learned of the allegedly defamatory remark more than two years before suit was filed. Thus, the discovery rule was not applicable.

 We will follow the suggestion our supreme court made in *Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex.1976), and refuse to apply the discovery rule where an allegedly defamatory statement is disseminated via the mass media. We hold that the summary judgment was properly granted because there was no genuine issue of material fact, *Great American Reserve Insurance Co. v. Plumbing Supply Co.,* 391 S.W.2d 41 (Tex.1965); TEX.R.CIV.P. 166–A. Holloway filed his suit on February 22, 1978, more than one year after February 18, 1977, and since the statute of limitation was not tolled by the discovery rule, the limitation period expired before Holloway filed his suit. Point of error four is overruled.

The judgment of the trial court is affirmed.