**Deen T. WILLIAMSON, Appellant,**

v.

**NEW TIMES, INC., d/b/a Dallas Observer, and Laura Miller, Appellees.**

**No. 2–97–178–CV.**

Court of Appeals of Texas, Fort Worth.

Aug. 6, 1998.

Rehearing Overruled Oct. 15, 1998.

Deen T. Williamson, Arlington, for Appellant.

Haynes and Boone, L.L.P., Thomas J. Williams, Melissa A. Smith, Fort Worth, for Appellee.

Before CAYCE, C.J., and DAUPHINOT and BRIGHAM, JJ.

## OPINION

CAYCE, Chief Justice.

Appellant, Deen T. Williamson ("Williamson"), appeals an order granting appellees, New Times, Inc., d/b/a Dallas Observer, and Laura Miller ("Miller"), summary judgment. In eleven points, Williamson contends that the trial court erred in granting summary judgment because it improperly applied the "single publication rule"; in refusing to file findings of fact and conclusions of law; in granting summary judgment based upon improper summary judgment evidence; and in failing to compel appellees to complete discovery requests. We will affirm.

In its November 16–22, 1995 issue, the *Dallas Observer* contained an article written by Miller entitled "They Wanted to Destroy Me." In this article, Miller chided the Dallas Independent School District (DISD) for hiring Williamson, a DISD school teacher, who was suspended from her job for allegedly telling her African–American fifth graders to "Go back to Africa." Specifically, the article discussed Williamson's capabilities as a teacher and interactions with her students in the DISD:

> This longtime Dallas school teacher is a sad, troubled soul—who has no business being in a classroom....
>
>    ....
>
>    ... [T]his 51–year–old career teacher can't spell or craft a proper sentence....
>
>    ....
>
> Interviews with school district employees, parents, and students—plus a review of Dallas Police Department incident reports—present a picture of a woman in a rage about race....
>
>    ....
>
> According to the DISD witnesses ... [Williamson] declared that blacks don't do well on state achievement tests; that her own sons couldn't get school scholarships because blacks got them instead; and that

"black people will always find a way to act a fool."

. . . .

Sergeant Fred Rich in [the Dallas Police Department's] child-abuse division [said] that police are considering filing misdemeanor assault charges against Williamson for alleged actions involving three students.

In addition to an admission by Williamson that she lied on her job application with the DISD, the article revealed personal and confidential information contained in Williamson's psychiatric files. Miller obtained the information from documents Williamson filed in federal court to support allegations in her lawsuit against her previous employer, the Abilene Independent School District, for terminating her employment. These records allegedly showed that Williamson was diagnosed as having a bipolar disorder—"meaning she was manic-depressive, exhibiting a condition marked by extreme emotional highs and equally extreme lows." The article concluded:

Deen Williamson is a sad, troubled soul. But what happened isn't really her fault. She's wrestling with private demons.

It's up to DISD to protect children from such folks—to hire teachers who can help kids, not those who are so much in need of help themselves.

The Deen Williamson episode, in short, is tragic—and DISD officials have no one but themselves to blame.

On November 15, 1995, Miller participated in a program on Dallas-based radio station, KRLD. In this program, Miller discussed appellant and the contents of her article published in the *Dallas Observer*.

On November 19, 1996, Williamson filed a lawsuit against appellees seeking redress for libel and slander resulting from the article published in the *Dallas Observer* and Miller's statements on KRLD. Williamson alleged that the article was meant to hold her up to ridicule, contempt, shame, and disgrace in the community. On February 3, 1997, appellees filed a motion for summary judgment asserting that Williamson's cause of action is time-barred by the one-year statute of limitations for libel and slander actions. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.002(a) (Vernon Supp.1998).[1] On February 28, 1997, the trial court granted appellees' motion and dismissed Williamson's claims.

When reviewing a summary judgment, we follow these well-established rules: (1) The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Summary judgment is proper if the defendant disproves at least one element of each of the plaintiff's claims, *see Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 476–77 (Tex.1995), or establishes all elements of an affirmative defense to each claim. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

■ In her first three points, Williamson contends that the trial court erred in granting appellees' motion for summary judgment because the court misapplied the "single publication rule." Specifically, Williamson argues that the trial court erred in finding that her causes of action were time-barred by the one-year statute of limitations as provided in section 16.002 of the Civil Practice and Remedies Code. She asserts that "publication" in this case ceased on November 22, 1995, when the left-over copies of the *Dallas Observer* were retrieved and replaced with the next issue. Consequently, on November 19, 1996, the date she filed her original petition, limitations had not expired. We disagree.

---

1. **§ 16.002. One–Year Limitations Period**
   (a) A person must bring suit for ... libel, slander ... not later than one year after the day the cause of action accrues.

*Id.*

Texas has adopted the "single publication rule" in cases alleging libel through the mass media. *See Stephenson v. Triangle Publications, Inc.,* 104 F.Supp. 215, 218 (S.D.Tex.1952); *Holloway v. Butler,* 662 S.W.2d 688, 690 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Under this rule, a libel or slander action accrues, for statute of limitations purposes, upon "publication." *See Holloway,* 662 S.W.2d at 692. Publication is complete on *"the last day of the mass distribution of copies of the printed matter"* because that is the day when the publishers, editors, and authors have done all they can to relinquish all right of control, title, and interest in the printed matter. *See id.* (emphasis supplied). Thus, in determining whether Williamson's lawsuit was time-barred on November 19, 1996, we must decide when the last day of mass distribution was for the printed matter. The cover dates for circulation purposes are irrelevant to our determination on this matter. *See id.*

The *Dallas Observer* is a weekly newspaper printed by an independent printing company. Each issue of the newspaper bears a cover date identifying the issue's seven-day publication period—beginning on Thursday and ending on the Wednesday of the following week. Because the *Dallas Observer* is a free newspaper, it is not distributed by paid circulation; rather it is placed in news racks and readers obtain copies from the various news racks located throughout the paper's distribution areas in North Texas. Representatives from the *Dallas Observer* deliver the copy for the next week's issue to the printer by Tuesday of the prior week. The actual printed newspapers are thereafter placed in the various distribution points by an independent distributor on the following Wednesday. During the distribution process, all remaining copies of the prior week's publication are collected and replaced with the current edition.

The uncontroverted summary judgment evidence shows that, in keeping with its usual schedule of operations, the *Dallas Observer* bearing the cover date of November 16–22, 1995, was delivered to the printer on Tuesday, November 14, 1995, and was made available for distribution to the public on Wednesday, November 15, 1995. We find, therefore, as a matter of law, that the November 16–22, 1995 issue of the *Dallas Observer* was "published," for purposes of triggering the running of the statute of limitations, on November 15, 1995. On this day, the newspapers were distributed en mass to the public and placed in the distribution racks in the various localities—that was the last day of *mass distribution.* Because this suit was filed on November 19, 1996, we hold that the trial court properly granted appellees' motion for summary judgment because the statute of limitations time-barred Williamson's causes of action. We overrule Williamson's first through third points.

In her sixth point, Williamson contends that the trial court erred by not applying the two-year statute of limitations as stated in TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon Supp.1998) [2] to her claims. Appellees contend that, because the primary gravamen of Williamson's cause of action is libel and slander, section 16.003 is inapplicable. We agree.

Williamson cannot avoid the application of the one-year statute of limitations simply by alleging that her cause of action is one controlled by the two-year statute of limitations if "the primary gravamen of the tort [alleged] is an injury to [her] personal reputation." *Gulf Atlantic Life Ins. Co. v. Hurlbut,* 696 S.W.2d 83, 97, 98 (Tex.App.— Dallas 1985), *rev'd on other grounds,* 749 S.W.2d 762 (Tex.1987). In determining the nature of Williamson's complaints, we must review the factual allegations contained within her pleadings, the evidence adduced in support of those allegations, and the type of damages alleged and proved. *See id.* at 97. If the damages alleged are primarily person-

2. § 16.003. Two–Year Limitations Period
    (a) Except as provided by Sections 16.010 and 16.0045, a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.
    *Id.*

al and general—e.g., injury to personal reputation, humiliation, or mental anguish—then the cause of action is one for libel or slander, even though incidental or consequential professional losses are also pleaded and proved. *See id.* at 98. However, if the main complaint is a false statement directly injurious to a business or property interest, and the damages alleged and proved are limited to business or property losses established with the specificity required for these sorts of damages, then the claim may properly be considered as one for business or property disparagement, even though aspects of personal defamation may be incidentally involved. *See id.* The injured party may sue for both torts in the same suit so long as she avoids duplication of damages. *See id.*

Having reviewed Williamson's pleadings and the evidence presented, we find that Williamson's causes of action are solely for libel and slander. The only facts and damages alleged in Williamson's pleadings were for the personal harm, if any, she suffered as a result of the alleged libelous and slanderous publications. Thus, because Williamson failed to plead or prove that she suffered harm to a business or property interest separate and apart from the personal harm she allegedly suffered, we find that she is not entitled to pursue her claims under the two-year statute of limitations. *See id.* We hold, therefore, that the trial court did not err in finding that Williamson's causes of action are not governed by section 16.003's two-year statute of limitations. Williamson's sixth point is overruled.

In her fourth point, Williamson asserts that the trial court erred in refusing to file findings of fact and conclusions of law because she was unable to ascertain upon what facts and grounds the trial court based its judgment. It is well-established, however, that a request for findings of fact and conclusions of law is not proper in a summary judgment context, and the trial court does not err by failing to file them. *See Cotton v. Ratholes, Inc.,* 699 S.W.2d 203, 204 (Tex.1985); *Robbins v. Warren,* 782 S.W.2d 509, 511 (Tex.App.—Houston [1st Dist.] 1989, no writ). We find, therefore, the trial court did not err in refusing to file findings of fact

and conclusions of law in this case. Williamson's fourth point is overruled.

In her fifth point, Williamson argues that the trial court erred in signing the Final Summary Judgment Order drafted by the appellees' attorneys because the merits of the case were not discussed in the summary judgment hearing. In her eighth point, Williamson contends that the trial court erred in failing to compel appellees to render immediate responses to her discovery requests prior to the summary judgment hearing. However, because Williamson has failed to present any argument or to cite any authority in support of these contentions, we find that these points have not been properly presented for our review. *See* TEX.R.APP. P. 38.1(h). Williamson's fifth and eighth points are overruled.

In her seventh point, Williamson contends that the trial court erred in rendering summary judgment based on the affidavits of Lee Newquist, the *Dallas Observer*'s publisher, and Miller. Williamson argues that Newquist's and Miller's affidavits were defective, inadequate, and self-serving because they were from interested witnesses and not clear, positive, direct, credible, or free from contradiction and could not be easily controverted. In her tenth point, Williamson contends that the trial court erred in allowing appellees' alleged "bad faith pleadings." Appellees contend that Williamson is precluded from presenting these arguments on appeal because she failed to assert these matters in the trial court below. We agree.

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. *See* TEX.R.APP. P. 33.1(a); *see also* TEX.R. EVID. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *See Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g).

Having reviewed the record, we find that Williamson failed to timely and properly object to Newquist's and Miller's affidavits

on the grounds raised in this appeal. Although Williamson raised a complaint against Newquist's and Miller's affidavits in her response to appellees' motion for summary judgment, it is not apparent from her complaint that she considered Newquist's and Miller's affidavits objectionable because Newquist and Miller were interested witnesses. Williamson's only objection in her response to the motion for summary judgment was that appellees' affidavits allegedly were "overt attempts" to deceive the court about when the appellees' relinquished "control, title, and interest" in the printed matter. We find that this objection was insufficient to apprise the trial court of the specific objection raised in this appeal. Further, although Williamson presented this issue to the trial court in her motion for new trial, in an appeal from a summary judgment, an objection raised for the first time in a motion for new trial is untimely and insufficient to preserve the alleged error for review. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979) ("[B]oth the reasons for the summary judgment and the objections to it must be in writing and before the trial judge at the hearing."); *Klafehn v. Fain*, 643 S.W.2d 227, 228 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). We conclude, therefore, that Williamson has not preserved this issue for appellate review. *See* Tex. R.App. P. 33.1(a).

Further, the record is devoid of any request, objection, or motion presented to the trial court apprising the court of appellees' alleged "bad faith pleadings" and any order granting or denying such request, objection, or motion. As a result, we find that Williamson cannot now assert this matter on appeal because the error, if any, was waived. *See id.; Utilities Pipeline Co. v. American Petrofina Mktg.*, 760 S.W.2d 719, 723 (Tex. App.—Dallas 1988, no writ). Williamson's seventh and tenth points are overruled.

In her ninth point, Williamson contends that the trial court erred in allowing appellees to file a general denial. Specifically, Williamson asserts that, because she filed an affidavit with her petition verifying the allegations contained therein, appellees violated Tex.R. Civ. P. 93(10) when they failed to file a verified answer to respond to her verified petition. Appellees contend that the general denial was sufficient to put in issue all allegations in this case because a verified denial was not required simply because the plaintiff filed a verified petition. We agree.

Tex.R. Civ. P. 92 states that a defendant may file a general denial to "matters pleaded by the adverse party which are not required to be denied under oath." A general denial sufficiently puts in issue all matters contained within the plaintiff's pleadings. *See id.*

Tex.R. Civ. P. 93(10) provides:

A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be *verified by affidavit.*

. . . .

10. *A denial of an **account** which is the foundation of the plaintiff's action,* and supported by affidavit.

*Id.* (emphasis supplied).

We find Williamson's reliance on Tex.R. Civ. P. 93(10) misplaced. This suit does not involve an action on a sworn account and, consequently, Rule 93(10) is inapplicable. *See Rizk v. Financial Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex.1979). We hold, therefore, that appellees' general denial sufficiently placed in issue all matters contained within Williamson's pleadings. *See* Tex.R. Civ. P. 92. Williamson's ninth point is overruled.

In her eleventh point, Williamson contends that this court erred in refusing to file her motion to compel admissions because the trial court should have deemed admitted by default all matters contained within her request for admissions when appellees failed to respond timely to her request. Specifically, Williamson asserts that appellees are deemed to have admitted all matters contained within her request for admissions that was filed before the hearing on appellees' motion for summary judgment because, to this day, appellees still have not responded. Appellees contend that the entry of a final summary judgment order relinquished any obligation they had to respond to Williamson's pending discovery requests in this case. We agree.

On July 17, 1997, Williamson submitted a motion to compel in this court seeking an order from this court directing appellees to respond to the discovery requests that were pending on and before the entry of the final summary judgment order. We instructed the clerk of this court to return Williamson's motion to compel to her because Williamson failed to identify under what authority this court could consider such a motion. On July 21, 1997, the clerk of this court dutifully returned Williamson's motion with a letter informing her of the court's ruling and inherent lack of authority to respond to her request. Because Williamson has failed, once again, to cite any authority showing this court that it improperly refused to file her motion, we find her contention without merit. *See* TEX.R.APP. P. 38.1(h). Moreover, we find that appellees were under no obligation to answer the admissions once the trial court rendered a final judgment as to all matters in this case. *See Boman v. Gibbs*, 443 S.W.2d 267, 272 (Tex.Civ.App.—Amarillo 1969, writ ref'd n.r.e.) (the court will not require the doing of a useless thing). Williamson's eleventh point is overruled.

We affirm the judgment of the trial court.