**Keneth MITAN Plaintiff**

v.

**Emory M. DAVIS and Carol C. Davis Defendants**

**No. CIV.A. 3:00CV–841–S.**

United States District Court, W.D. Kentucky, At Louisville.

Feb. 3, 2003.

Keneth Mitan, West Bloomfield, MI, Pro Se.

J. Fox DeMoisey, Jonathan Earl Breitenstein, DeMoisey & Smither, Louisville, KY, for Defendants.

### MEMORANDUM–OPINION

SIMPSON, District Judge.

This matter is before the court on motion of the defendants, Emory and Carol Davis ("Davises"), for Summary Judgment pursuant to FED. R. CIV. P 56(b). (DN 14) Plaintiff, Keneth Mitan ("Mitan"), alleges that he has been defamed by an internet website created and maintained by the defendants. Defendants argue that Mitan's complaint is barred by KRS 413.140(1)(d), Kentucky's one year statute of limitations for actions lying in libel or slander.

### Factual Background

In 1998 Mitan and the Davises entered into a business deal where Mitan would acquire the Davises' business, S & B Glass Company, Inc., under the terms of an owner financed note by a shadow company called "Magnifique Plus 23." The Davises allege that after the sale of the business Mitan "raided the business by diverting accounts receivables, payments and deposits, not paying employee insurance premiums, not paying suppliers and selling off

assets." *Defendants' motion for summary judgment* at 5.

Following their experience, the Davises began an internet website at *www.mitanalert.com* to "inform others of their experiences with Mitan and to offer access to other information ... concerning Mitan." *Id.*

In October of 1999, after Mitan became aware of the website, he filed an action in Jefferson Circuit Court to terminate the use of the website. The motion was denied and no further efforts were made by Mitan until he filed his complaint in this court on December 29, 2000.

In his complaint, Mitan points to ten specific statements on the *mitanalert.com* website which he claims cast him in a false and defamatory light and are libelous, caused him embarrassment and mental anguish, and improperly interfered with his prospective contractual relations.

The Davises argue that nine of Mitan's libel claims are barred by Kentucky's applicable one year statute of limitations for actions brought in libel or slander. KRS § 413.140(1)(d). Of the ten statements Mitan contends are libelous, four were present on the website on October 12, 1999. *Complaint* at ¶ 22, 26, 61, 62. Five of the statements were added to the website when it was modified by the Davises on December 7, 1999. *Complaint* at ¶ 19,30,32,35,38;*Affidavit of Emory and Carol Davis,* attached as Exhibit B to defendants' reply memorandum.[1] The final statement Mitan claims is libelous is a WXYZ Channel 7 (Detroit, Michigan) investigative report which was posted on the site on February 25, 2000. *Complaint* at ¶ 41.

### Legal Analysis

■ To determine whether Mitan's libel claims are barred by Kentucky's one year statute of limitations, we must determine when the defamatory statements were published. As a federal court sitting in diversity, we apply Kentucky law. *Hill v. R.J. Reynolds Tobacco Co.* 44 F.Supp.2d 837, 841 (W.D.Ky.1999). In the absence of a controlling decision on the issue at hand, we must attempt to predict how the state court will act in the future. *Hines v. Joy Mfg. Co.,* 850 F.2d 1146, 1150 (6th Cir. 1988).

At common law, courts followed the "multiple publication rule," as set forth in *Duke of Brunswick v. Harmer,* 14 Q.B. 185; 117 Eng. Rep. 75 (1849), that a defamatory statement was published each time it was delivered to a third person. This rule was accepted by the First Restatement of Torts. RESTATEMENT (FIRST) OF TORTS: Liability of Republisher § 578, comment b (1938).

However, with the advent of mass publication, courts recognized that the rule was not well suited to the realities of widespread distribution. As one court observed, the multiple publication rule "had its origin in an era which long antedated the modern process of mass publication and nationwide distribution of printed information. That rule also gave scant heed to the public policy which underlies statutes of limitation, ... to outlaw stale claims" *Gregoire v. G.P. Putnam's Sons,* 298 N.Y. 119, 81 N.E.2d 45, 47 (1948).

Today, almost all jurisdictions and the Second Restatement of Torts have recognized an exception to the rule known as the "single publication rule." *Ogden v. Association of the United States Army,* 177 F.Supp. 498, 502 (D.D.C.1959); *Applewhite v. Memphis State Univ.,* 495 S.W.2d 190, 193 (Tenn.1973). The rule has also been adopted by the Commissioners on

---

**1.** The plaintiff has not challenged this affidavit.

Uniform State Laws in the Uniform Single Publication Act, § 1, 14 U.L.A. 377 (1990).

 Under the single publication rule, "any one edition of a book or newspaper, or any one radio or television broadcast, exhibition or a motion picture or similar aggregate communication is a single publication." RESTATEMENT (SECOND) OF TORTS § 557A (1977). As a result, the aggregate communication can give rise to only one action in any one jurisdiction where the dissemination occurred, and only one statute of limitations, which begins to run when "the finished product was released by the publisher for sale in accord with trade practice." *Zuck v. Interstate Publishing Corp.*, 317 F.2d 727, 730 (2nd Cir.1963). A republication occurs when a defamatory article is placed in a new form (paperback as opposed to hardcover) or edited in a new form. *Firth v. State,* 184 Misc.2d 105, 706 N.Y.S.2d 835, 841 (N.Y.Ct.Cl.2000).

The last word from the Kentucky courts on when a cause of action for libel based on a mass publication accrues came in *Louisville Press Co. v. Tennelly,* 105 Ky. 365, 49 S.W. 15 (1899), published in 1899. In that case, the court considered whether the publisher of a newspaper could be sued in all jurisdictions where the newspaper was circulated. *Id.* at 16. The court, quoting *Staub v. Van Benthuysen,* 1884 WL 7852, 36 La. Ann. 467 (La.1884), wrote that "every sale or delivery of a written or printed copy of liable is a fresh publication and each person who sells a written or printed copy of it may be sued therefor."

In light of the way information is disseminated in our modern world, along with the adoption of the single publication rule by a majority of jurisdictions, we must ask whether a Kentucky court faced with this issue today would follow the precedent established in 1899, or would instead revisit the issue and adopt the single publication rule.

We believe that were a Kentucky court to examine this issue today it would adopt the single publication rule. First, Kentucky courts have frequently looked to the Restatement of Torts in ascertaining tort liability. *Edward F. Heimbrock Co. v. Marine Sales and Service,* 766 S.W.2d 70, 72 (Ky.App.1989), *citing Claycomb v. Howard,* 493 S.W.2d 714, 718 (Ky.1973); *Dealers Transp. Co. v. Battery Distrib. Co.,* 402 S.W.2d 441, 446–47 (Ky.1965).

Second, the single publication rule is widely accepted in other jurisdictions. Kentucky has a substantial interest in cooperating with other states to provide a forum for efficiently litigation all issues and damages claims arising out of a liable in a unitary proceeding.

Third, several well-respected commentators on Kentucky law have treated the single publication rule as prevailing. DAVID J. LEIBSON, KENTUCKY PRACTICE: TORT LAW § 15.3 (1995); WILLIAM S. HAYNES, KENTUCKY JURISPRUDENCE: TORTS § 8–13 (1987).

Finally, the single publication rule is much better equipped to handle aggregate communication. The purpose of adopting the "single publication rule" was to protect defendants from harassment from multiple suits and to reduce the drain of libel cases on judicial resources. *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 777, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). The rule more squarely addresses the goal of the statute of limitations, which is to prevent stale suits.

After determining that the single publication rule would be adopted in Kentucky, we must consider whether it applies to material posted on the Internet. We found only three cases which consider this issue.

The case which the plaintiff requests this court to follow is *Swafford v. Memphis Individual Practice Association,* 1998 WL

281935 (Tenn.Ct.App.1999). In *Swafford,* the court addressed whether defamatory material reported by a medical data bank gives rise to a separate cause of action each time the information is disseminated.

The plaintiff, Dr. Greg Swafford, entered into an agreement with defendant, Southern Health Plan, Inc. where Southern Health was to refer a specific number of patients to Dr. Swafford, and he was required to treat them. *Id.* at \*1. After Southern Health terminated the agreement with Dr. Swafford for providing substandard care, they reported his termination to the National Practioner Data Bank ("data bank"). *Id.* The data bank provided information on doctors to health care entities over the Internet. *Id.* Information in the data bank was confidential and could only be accessed by health care entities. *Id.* The data bank reported Dr. Swafford's termination to at least three different entities. *Id.* Although Dr. Swafford knew in January of 1992 that the data bank contained incorrect information, he did not file suit until June of 1993. *Id.*

Tennessee had a one year statute of limitations for defamation actions. Dr. Swafford argued that although more than one year had passed since he learned of the information on the data bank, one of the disseminations occurred less than a year before the claim was filed, and thus constituted a separate and timely claim. *Id.*

The Tennessee Court of Appeals held that the single publication rule was inapplicable. *Id.* at \*8. Since there were no reported cases on Internet defamation, the court looked to decisions considering defamatory statements contained in credit reports. *See Hyde v. Hibernia Nat'l Bank,* 861 F.2d 446 (5th Cir.1988); *Lawhorn v. Trans Union Credit Info. Corp.,* 515 F.Supp. 19 (E.D.Mo.1981). In those cases, the courts had determined that liability arose when the credit report was transmitted from the credit agency to a user. Similarly in *Swafford,* the court reasoned that the confidential nature of the data base along with fact that information was requested by a handful of entities on separate and distinct occasions distinguished the data base from the aggregate publication found in cases applying the single publication rule. *Swafford,* at \*8.

The defendants urge us to follow the decision of *Firth v. State,* 184 Misc.2d 105, 706 N.Y.S.2d 835 (N.Y.Ct.Cl.2000). In *Firth,* the plaintiff sued the state of New York for publishing an investigative report on the Internet containing allegations of fraud and illegal activity on the part of the plaintiff. The plaintiff brought suit more than one year after the report was published on the Internet, and the defendant moved to dismiss his claim as falling outside of New York's one year statute of limitations for defamation. *Id.* at 838. The plaintiff argued that because the report continued to be available on the Internet, it constituted a continuing wrong and each day the article was on the Internet established a new publication.

The court first rejected the continuing wrong argument, finding that the wrongful acts were all part of an investigation which ended with the issuance of the report. *Id.* at 840. The court then considered whether the single publication rule applied to defamatory publications on the Internet.

The *Firth* court held that the single publication rule was applicable to the Internet, finding that there was "no rational basis upon which to distinguish publication of a book or report through traditional printed media and publication through electronic means." *Id.* at 843. The court reasoned:

> Concerns regarding the rapid pace of changes in the way information is disseminated, the desire to avoid multiplicity of suits and the need to give effect to relevant Statutes of Limitation which

gave rise to the single publication rule ...are no less germane today than at the time of the rule's adoption. *Id.*

The court went on to say that in the absence of some alteration or change in form, the report's continued availability on the Internet did not constitute a republication beginning the Statute of Limitations anew each day. *Id.*

The third case that considers the issue is *Van Buskirk v. New York Times Company,* 2000 WL 1206732 (S.D.N.Y.2000). In *Van Buskirk,* the plaintiff sued the defendants for defamation based on a letter posted on the Internet more than a year before he brought suit. Upon the defendant's motion, the court dismissed the plaintiff's defamation claim as barred by New York's one year statute of limitations.

Applying New York law and citing *Firth,* the court held that the single publication rule was applicable to Internet postings. *Id.* at *4. The court rejected the plaintiff's argument that the single publication rule should only apply to commercial publishers, reasoning that the Internet has made widespread publication affordable to noncommercial users. *Id.* at *5. The court also rejected the argument that Internet publications should not be governed by the single publication ruled because they can be withdrawn at anytime. The court reasoned that this was no different from a publisher selling a book from stock containing defamation. In that situation, the courts have held that the sale does not constitute a republication, even though the publisher could have withdrawn the book. *Id.* at *6; *see Gregoire,* 81 N.E.2d at 49.

While the *Swafford* case dealt with an Internet data bank that was only accessible by a select group of users, both *Firth* and *Van Buskirk* addressed defamatory statements that were posted on the Internet and accessible to the general public. In the latter two cases, the courts reasoned that a statement posted on the Internet was no different from a statement in a newspaper or a book. We agree. A statement electronically located on a server which is called up when a web page is accessed, is no different from a statement on a paper page in a book lying on a shelf which is accessed by the reader when the book is opened.

After carefully examining the issue, we can find no basis for treating defamatory Internet communication differently than any other form of aggregate communication. Therefore, we will apply the single publication rule to the statements in this case which were published on the Internet.

As such, we find that plaintiff's libel claims based on statements defendants posted on the Internet before December 29, 1999 are barred by Kentucky's one year statute of limitations. The only libel claim which remains viable is the posting of the WXYZ Channel 7 news report.

For the reasons stated above, plaintiff Keneth Mitan's libel claims based on the statements in ¶ 19,22,26,30,32,34,35,38,- 61,62 of the complaint are hereby DISMISSED with prejudice.