**Affirmed and Opinion filed August 21, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00268-CV

---

### HELEN MAYFIELD, Appellant

### V.

### STEVE FULLHART AND
### GRAY TELEVISION GROUP, INC. D/B/A KBTX-TV, Appellees

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2011-26159**

---

### O P I N I O N

Appellant, Helen Mayfield, sued appellees, Gray Television Group, Inc. d/b/a KBTX-TV[1] and Steve Fullhart for libel based on reports regarding Mayfield that appellees broadcast on television and posted on the internet. Mayfield

---

[1] In her petition, Mayfield named "Gray Communications" and "KBTX News" as defendants. Appellees filed an unchallenged verified denial, averring the correct name of the one entity is "Gray Television Group, Inc. d/b/a KBTX-TX" and there is no separate entity named "KBTX News."

appeals a summary judgment in favor of appellees on the ground her claim is barred by the statute of limitations. We affirm.

## I. BACKGROUND

Mayfield, a disbarred attorney, appears pro se in the present appeal. In 2007, a grand jury indicted Mayfield on multiple counts of forgery. In July 2008, a Brazos County jury convicted Mayfield, and she was sentenced to two years' confinement in state jail. The Waco court of appeals affirmed the conviction, and the Texas Court of Criminal Appeals refused Mayfield's petition for review. *See Mayfield v. State*, Nos. 10-08-00292, 293, 294, 295-CR, 2010 WL 2953199 (Tex. App.—Waco July 28, 2010, pet. ref'd) (mem op., not designated for publication).

At relevant times, Fullhart was a news reporter for KBTX-TV—a television station in College Station, Texas. On October 5, 2007, the station broadcast a report by Fullhart regarding Mayfield's indictments. A few hours later the same day, the report was published on the station's publicly accessible website.

On July 25, 2008, the station broadcast another report by a different news reporter regarding Mayfield's conviction. A few hours later the same day, that report was published on the station's website.

On April 29, 2011, Mayfield sued appellees for libel.[2] Mayfield also named John Cuoco, apparently a reporter for a different television station, as a defendant, but he was never served with process.

Appellees filed a motion for summary judgment on the sole ground that Mayfield's suit is barred by the applicable one-year statute of limitations.

---

[2] In her petition, Mayfield referred to her claim generally as "defamation," but it is more specifically a claim for libel. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 917 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (recognizing broadcast of a defamatory statement on television constitutes libel, not slander).

Mayfield timely filed a response and a countermotion for summary judgment, to which appellees responded. Mayfield set her countermotion for submission after the hearing date noticed on appellees' motion. At the hearing on appellees' motion, the trial court permitted Mayfield to file post-hearing authority on the limitations issue. Subsequently, Mayfield filed what she referenced as further responses to appellees' motion, including additional argument on the limitations issue, and further support, including evidence, for her countermotion.

On December 13, 2011, the trial court signed (1) an order granting the appellees' motion for summary judgment and dismissing all of Mayfield's claims against those parties, and (2) an order denying Mayfield's countermotion for summary judgment. Subsequently, Mayfield non-suited her claims against Cuoco, thereby rendering final the summary judgment in favor of appellees.

## II. ANALYSIS

Mayfield filed an original and a supplemental appellate brief, which are deficient in that many of her contentions are unclear, difficult to understand, and unsupported by record references, argument, or authorities, as required by the appellate briefing rules. *See* Tex. R. App. P. 38.1(g), (i).[3] However, liberally construing the briefs, we glean that Mayfield's issues pertinent to this appeal (numbered differently at various points throughout her brief) fall into five categories: (1) portions of the clerk's record have been destroyed or altered; (2) some of appellees' summary judgment evidence was inadmissible; (3) appellees failed to produce certain items during discovery; (4) appellees failed to serve

---

[3] Additionally, Mayfield includes matters irrelevant to challenging the trial court's orders at issue and unsubstantiated allegations. For instance, she essentially challenges her criminal conviction and the actions of authorities relative to the criminal prosecution and suggests appellees burglarized Mayfield's home to steal her legal files.

3

Mayfield with a complete copy of the motion for summary judgment and any notice of hearing; and (5) the statute of limitations did not bar her suit.

## A. Complaint regarding the Record

Mayfield contends her due process rights were violated because she is indigent and entitled to a free record but the district clerk omitted exhibits that would defeat the statute-of-limitations ground from the record filed in our court. We reject this contention because the crux is not that the clerk inadvertently failed to file a complete record but rather an unsupported claim that "someone in the judge's office" or appellees tampered with the record. Moreover, Mayfield did not request the clerk to supplement our record with any omitted items, as she was permitted to do if she believed a requisite item was missing. *See* Tex. R. App. P. 34.5(c)(1). She claims a request to supplement would have been pointless because the records have been "destroyed or altered." However, the record does not reflect that Mayfield invoked the procedure for correcting the record if an item is lost or destroyed. *See id.* 34.5(e).

## B. Admission of Evidence

Mayfield argues the "documents of conviction" purportedly filed to support the motion for summary judgment were inadmissible under Texas Rule of Evidence 609(e) because appeal of her conviction was pending in the United States Supreme Court. It is not clear to what documents she refers. Regardless, rule 609 is wholly inapplicable; it prescribes circumstances under which a prior criminal conviction is admissible *for purposes of impeaching a witness* and provides that pendency of an appeal renders a conviction inadmissible for that purpose. *See* Tex. R. Evid. 609, 609(e).

4

## C.    Contention regarding Discovery

Mayfield argues that appellees failed to respond to her discovery requests with documents that would defeat the statute-of-limitations ground.  Mayfield has waived her complaint because the record does not indicate she filed a motion to compel production of any documents before the hearing, much less obtained a ruling.  *See* Tex. R. App. P. 33.1(a)(1) (providing that, to preserve error, party must present complaint to trial court via timely objection or request and obtain a ruling); *Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 84 (Tex. App.—Texarkana 2008, pet. denied) (recognizing that failure to obtain ruling on discovery dispute waives challenge to summary judgment on ground movant did not adequately respond to discovery request); *see also U. Lawrence Boze' & Assoc., P.C. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 32 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (recognizing generally that to preserve error on a discovery dispute, the appealing party must obtain a ruling by the trial court on the discovery issue).

## D.    Service of the Motion for Summary Judgment and Notice of Hearing

Mayfield suggests she was not served with a complete copy of appellees' motion for summary judgment and any notice of hearing.  However, the motion and the notice of hearing each contain a certificate of service by appellees' counsel attesting to timely service on Mayfield via certified mail, return receipt requested.  A certificate of service by an attorney of record is prima facie evidence of the fact of service, and creates a presumption of receipt, rebuttable through proof of non-receipt.  *See* Tex. R. Civ. P. 21a(e); *Approx. $14,980 v. State*, 261 S.W.3d 182, 186–87 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  Further, a non-movant seeking to set aside a summary judgment on the ground she received no notice of hearing must preserve error in a post-judgment motion.  *See Babajide v. Citibank (South Dakota), N.A.*, No. 14–04–00064–CV, 2004 WL 2933575, at *1 (Tex.

App.—Houston [14th Dist.] Dec. 21, 2004, no pet.) (mem. op.). The record does not demonstrate that Mayfield raised the service issue in the trial court, much less that she presented evidence controverting the certificates of service.

## E.    Statute-of-Limitations Ground

Mayfield challenges the summary judgment on the ground her suit was barred by the statute of limitations. We conclude the trial court did not err by granting summary judgment on that ground.[4]

### 1.    Standard of Review and Applicable Law

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). A defendant moving for traditional summary judgment must negate at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). If a movant defendant establishes his right to summary judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We review a summary judgment *de novo*. *Knott*, 128 S.W.3d at 215. We take all evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in her favor. *Id.*

---

[4] Mayfield does not expressly challenge the denial of her countermotion for summary judgment. In that motion, Mayfield asserted she could prove all elements of her claim and referenced her attached evidence. In her appellate brief, she argues appellees' publications were defamatory. Even if we construe that argument as challenging the denial of her counter motion, the trial court did not err by denying that motion and granting appellees' motion because the statute of limitations bars Mayfield's claims, irrespective of whether they are meritorious.

6

## 2. Discussion

Under Texas law, the statute of limitations for libel is one year after the date that the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a) (West 2002). To support their limitations ground, appellees relied on "the single publication rule," which our court has adopted in cases alleging mass media libel. *See Holloway v. Butler*, 662 S.W.2d 688, 690–91 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *see also Williamson v. New Times, Inc.*, 980 S.W.2d 706, 710 (Tex. App.—Fort Worth 1998, no pet.). The "single publication rule" provides,

> No person shall have more than one cause of action for damages for libel . . . or any other tort founded upon any single publication or exhibition or utterance, such as any one edition or issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

*Holloway*, 662 S.W.2d at 690. When the rule applies, a libel action accrues, for statute-of-limitations purposes, upon "publication." *See id.* at 692; *see also Williamson*, 980 S.W.2d at 710. Publication is complete on "the last day of the mass distribution of copies of the printed matter" because that is the day "when the publishers, editors and authors have done all they can to relinquish all right of control, title and interest in the printed matter." *See Holloway*, 662 S.W.2d at 692; *see also Williamson*, 980 S.W.2d at 710. Our court rejected the principle that each time a libelous article is brought to the attention of a third person, such as each time a libelous book, paper, or magazine is sold, a new publication has occurred, creating a separate tort. *See Holloway*, 662 S.W.2d at 690–91. The rationale behind the single-publication rule includes (1) preventing the assertion of stale claims, multiplicity of claims, and problems concerning apportionment of

7

damages, conflicts of laws, and venue, and (2) the fact that the mass communication of a single defamatory statement constitutes, for all practical purposes, a single wrong. *See id.* at 691. A plaintiff is not limited to a single cause of action in the event the same information appears in separate printings of the same publication or in different publications. *Id.* at 692. The single publication rule applies strictly to multiple copies of a libelous article published as part of a single printing. *Id.*

Appellees presented as summary judgment evidence affidavits averring as follows: (1) their two news reports regarding Mayfield were broadcast respectively on October 5, 2007 and July 25, 2008, and posted on the KBTX-TV website the same days; (2) neither KBTX-TV nor Fullhart individually has published any news reports or otherwise made any statements concerning Mayfield since July 25, 2008; and (3) since the dates that KBTX-TV posted the reports on its website, the reports "have not been reposted, republished, edited, changed, or altered in any way." As appellees asserted, Mayfield did not file her suit until April 29, 2011— well over one year after the last report was broadcast on television and posted on the station website.[5] Although Mayfield claims the affidavits presented by appellees were perjured, she failed to present any controverting evidence.

Mayfield presents what we construe as three challenges to the limitations ground: (1) the single publication rule does not apply to a libel claim based on a report published on the internet; (2) the discovery rule tolled the limitations period; and (3) she alleged a business disparagement claim, for which the statute of

---

[5] Although not exactly clear, in her petition, Mayfield's claim against appellees seems to be based only on their October 5, 2007 report—not their July 25, 2008 report. Mayfield did complain that John Cuoco made an allegedly defamatory report in July 2008, but Mayfield's summary judgment evidence indicated he was a reporter for a different television station than KBTX-TV. Even if Mayfield's claim against appellees was also based on their July 25, 2008 report, appellees established the entire claim is barred by limitations.

limitations is two years, the discovery rule applies, and the single publication rule does not apply.

### *Application of the single publication rule to internet publication*

We recognize that the *Holloway* court defined the single publication rule to include only one cause of action for "any one broadcast over . . . television," but its discussion regarding determining when a publication has occurred focused on printed media, such as a newspaper. *See id.* at 690–92. Regardless, Mayfield does not challenge application of the single publication rule relative to the television broadcasts at issue; she focuses solely on the internet publication of the reports. In fact, as mentioned above, there is no evidence controverting appellees' proof that the reports were each broadcast only once on television. Thus, we need not further address the single publication rule relative to television broadcasts.

Rather, we turn to Mayfield's argument that the single publication rule should not apply when, as in the present case, a news report is posted on the publisher's webpage. Mayfield suggests a report posted on the internet has a greater potential than a report published in a newspaper or on television to remain publicly available for a long period, be repeatedly viewed, and be viewed by a wide audience. She apparently maintains that a new cause of action for libel accrues, for limitations purposes, each day that the report remains on the internet; i.e., there is a new publication and Mayfield has been defamed every day because the report remains accessible to third parties.

We have not found, and the parties do not cite, any Texas cases addressing whether the single publication rule applies to a media report posted on the internet. However, in *Nationwide Bi-Weekly Administration, Inc. v. Belo Corp.*, 512 F.3d 137, 141–46 (5th Cir. 2007), the Fifth Circuit Court of Appeals predicted The Supreme Court of Texas would apply the rule to a report published on the internet

and reject "the continuous publication rule" suggested by Mayfield—that when such a report remains constantly available on the internet, each day results in a new publication. *See id.* at 143 (recognizing Fifth Circuit, when applying Texas law but addressing unsettled issue, is required to follow the rule it believes the Supreme Court of Texas would adopt). The Fifth Circuit based its decision on (1) the majority view among courts, and (2) the rationale behind the rule. *See id.* at 142–46.

With respect to the first factor, the Fifth Circuit was persuaded by the fact that every court that had decided the issue as of that date had held the single publication rule applies to information publicly available on the internet. *See id.* at 144 (citing, e.g., *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1133 (9th Cir. 2006); *Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2nd Cir. 2003); *Mitan v. Davis*, 243 F.Supp.2d 719, 724 (W.D. Ky. 2003); *Churchill v. State*, 378 N.J. Super. 471, 876 A.2d 311, 316 (2005); *McCandliss v. Cox Ent*ers., 265 Ga. App. 377, 593 S.E.2d 856, 858 (2004); *Traditional Cat Ass'n, Inc. v. Gilbreath*, 118 Cal.App.4th 392, 13 Cal.Rptr.3d 353, 361–62 (2004); *Firth v. State*, 98 N.Y.2d 365, 747 N.Y.S.2d 69, 775 N.E.2d 463, 466 (2002)).[6]

With respect to the second factor, the Fifth Circuit relied on the rationale behind the widespread acceptance of the single publication rule in the internet context, which consisted of the following considerations:

- The "functional similarities" between print and internet publications: "A statement electronically located on a server which is called up when a web page is accessed, is no different from a statement on a paper page in

---

[6] The Fifth Circuit found only one case applying "the continuous publication rule," although the Fifth Circuit also stated that case was factually distinguishable because the website at issue was a restricted-access database and not a website available to the public. *See Belo*, 512 F.3d at 143–44 (discussing *Swafford v. Memphis Individual Practice Ass'n*, No. 02A01–9612–CV–00311, 1998 WL 281935 (Tenn. Ct. App. June 2, 1998)).

a book lying on a shelf which is accessed by the reader when the book is opened." *Id.* at 144 (quoting *Mitan*, 243 F.Supp.2d at 724); *see also Kaufman v. Islamic Soc'y of Arlington*, 291 S.W.3d 130, 140 (Tex. App.—Fort Worth 2009, pet. denied) (citing "functional similarities" recognized by *Belo* court as a factor when holding journalist author of internet article was "a member of the electronic or print media," same as one publishing through more traditional media, and thus authorized to bring interlocutory appeal from order denying summary judgment);

- More importantly, the "potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants" and a corresponding chilling effect on internet communication. *Belo*, 512 F.3d at 145 (quoting *Firth*, 747 N.Y.S.2d 69, 775 N.E.2d at 466); and

- The fact that application of the rule to internet publications is consistent with the policy considerations cited by Texas courts for applying the rule to print media:  to support the statute of limitation and prevent the filing of stale claims. *Id.* (citing *Holloway*, 662 S.W.2d at 691).

The Fifth Circuit further rejected arguments similar to those suggested by Mayfield in the present case. *See id.* at 145.  Its plaintiff urged that "the publication of defamatory and private information on the web has the potential to be vastly more offensive and harmful than it might otherwise be in a more circumscribed publication." *Id.*  The court reasoned that the concern more persons will read internet publications because they are likely accessible for a potentially indefinite period is outweighed by the competing policy interest of enforcing the statute of limitations and preventing stale claims.  *Id.* (citing *Holloway*, 662 S.W.2d at 691).  The court also reasoned that the concern regarding broader readership (irrespective of the temporal component) is likely relevant only to the issue of damages—not to the triggering of the statute of limitations.  *Id.*

Although we are not bound by the Fifth Circuit's interpretation of Texas law, *see Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) *Longview Bank & Trust Co. v. First Nat'l Bank of Azle*, 750 S.W.2d 297, 300 (Tex. App.—Fort Worth 1988, no pet.), or its predictions about what rule The Supreme

Court of Texas likely would apply, we agree with the Fifth Circuit's reasoning and hold that the single publication rule applies to a television station's news report publicly available on the internet. Accordingly, Mayfield's libel claim for each of the two reports at issue accrued on the sole date that the report was broadcast on television and posted on the station's website. Because Mayfield filed suit more than one year after each such broadcast and internet publication, her libel claim is barred by the statute of limitations.

### *Discovery rule*

Mayfield also suggests, without supporting authority, that the discovery rule tolled the limitations period because she was unaware of the reports when they were first broadcast and published on the internet. Assuming, without deciding, that she sufficiently raised this unpleaded contention in response to appellees' motion for summary judgment, *see Butler v. Lowe's Home Centers, Inc.*, No. 14–10–00297–CV, 2011 WL 1709898, at *2–3 (Tex. App.—Houston [14th Dist.] May 3, 2011, pet. denied) (mem. op.), our court has held the discovery rule does not apply when an allegedly defamatory statement is disseminated via the mass media. *Holloway*, 662 S.W.2d at 693. Accordingly, we reject application of the discovery rule to toll limitations on Mayfield's libel claim.

### *Contention regarding business disparagement claim*

Finally, Mayfield contends she asserted a business disparagement claim for which the statute of limitations is two years, the discovery rule applies, and the single publication rule should not apply. *See Dwyer v. Sabine Min. Co.*, 890 S.W.2d 140, 142 (Tex. App.—Texarkana 1994, writ denied) (acknowledging business disparagement has two-year statute of limitations); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2014). As we construe this

12

complaint, Mayfield suggests appellees failed to address and prove entitlement to summary judgment on one of her causes of action.

We review a summary judgment based on the pleadings "on file at the time of the hearing, or filed thereafter and before judgment with permission of the court," and a claim not pleaded cannot form the basis for reversal. *See* Tex. R. Civ. P. 166(a)(c); *Taylor v. Sunbelt Mgmt., Inc.*, 905 S.W.2d 743, 744–45 (Tex. App.—Houston [14th Dist.] 1995, no writ); *Wakat v. Montgomery County*, No. 09-09-00188-CV, 2011 WL 1224459, at *4 (Tex. App.—Beaumont Mar. 31, 2011, no pet.) (mem. op.). We conclude Mayfiled pleaded only a claim for defamation (more specifically, libel) which is distinct from a claim for business disparagement. *See Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

The two torts differ in that a defamation action chiefly serves to protect the personal reputation of an injured party, while a business disparagement claim protects economic interests. *Id.* A plaintiff seeking damages for business disparagement must prove special damages resulting from the harm. *Id.* If the damages alleged are primarily personal and general—e.g., injury to personal reputation, humiliation, or mental anguish—then the cause of action is one for libel or slander, although incidental or consequential professional losses also are pleaded and proved. *Williamson*, 980 S.W.2d at 710–11. However, if the main complaint is a false statement directly injurious to a business interest and the damages alleged and proved are limited to business losses, the claim may properly be considered business disparagement, although aspects of personal defamation may be incidentally involved. *See id.* at 711.

In Mayfield's petition, the title of the section pleading her cause of action is "Defamation." She never mentions "business disparagement" in the petition  She makes only a general, passing reference to potential "financial injury" when

13

pleading the reports were defamatory because they injured her reputation: "All of . . . Fullhart's statements were false and defamatory per se because they were not true and injured Mayfield's reputation and exposed her to public contempt, ridicule and financial injury." Mayfield did not specify any business or property interest that was directly injured by appellees' publications. Then, when requesting damages, she alleged, "Mayfield's good reputation has been severely injured. . . . Fullhart's allegations tainted the jury pool and caused Mayfield to suffer mental anguish, shame, public embarrassment." Mayfield requested damages only resulting from harm to her reputation and did not request any special damages. In fact, in her summary judgment responses, she seemed to acknowledge that she did not plead a business disparagement claim because she suggested her suit would not be barred by limitations if she were subsequently permitted to plead such a claim.

Therefore, we conclude the pleading contains only a claim for libel. Thus, we need not decide whether the discovery rule or single publication rule would apply to any business disparagement claim. The trial court did not err by granting summary judgment on the ground that the one-year statute of limitations barred the libel claim.

Accordingly, we overrule all of Mayfield's issues and affirm the trial court's judgment.


/s/ John Donovan
Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown.

14