**AFFIRM; and Opinion Filed August 7, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01012-CV

**PEARL ENERGY INVESTMENT MANAGEMENT, LLC, PEARL ENERGY INVESTMENTS, L.P., WILLIAM QUINN, AND AVAD ENERGY PARTNERS, LLC, Appellants**
**V.**
**GRAVITAS RESOURCES CORPORATION AND ALAN PINTO, Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-03007**

## MEMORANDUM OPINION
Before Justices Brown, Schenck, and Pedersen, III
Opinion by Justice Brown

Appellees Gravitas Resources Corporation (Gravitas) and Alan Pinto sued appellants Pearl Energy Investment Management, LLC (Pearl Management), Pearl Energy Investments L.P. (Pearl Fund), and William Quinn (together, the Pearl defendants), and AVAD Energy Partners, LLC (AVAD) in this dispute concerning the purchase of oil and natural gas assets in Utah. Appellants filed motions to dismiss appellees' claims pursuant to the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (the TCPA), which the trial court denied. In eleven issues,[1] appellants contend the trial court erred in denying their motions and not awarding them attorneys' fees, costs, and sanctions because (1) appellees' claims are based on, related to, or in

---

[1] The Pearl defendants together filed a motion to dismiss and raise seven issues on appeal; AVAD filed a separate motion to dismiss and raises four issues on appeal.

response to appellants' TCPA rights of association and free speech, (2) appellees did not establish the TCPA's "commercial speech" exemption applied to its claims against Pearl Management and Pearl Fund; (3) appellees did not provide clear and specific evidence of a prima facie case for each element of each of its claims; and (4) AVAD proved its independent discovery defense by a preponderance of the evidence. We conclude appellants failed to carry their burden of establishing the TCPA applies to appellees' claims. Accordingly, we affirm the denial of appellants' motions to dismiss.

BACKGROUND

Gravitas is an oil and natural gas production corporation. Pearl Management, founded by Quinn, is a private equity firm with a focus on oil and gas investments. Pearl Fund is an investment fund established by Pearl Management, and AVAD is a Pearl Management portfolio company. Quinn also is the founder, partner, and/or manager of Pearl Fund and sits on AVAD's board of managers. The following facts are drawn from appellees' petition.

Gravitas spent years evaluating and attempting to purchase oil and natural gas assets in Utah's Helper and Drunkards Wash fields (the "Property") from Andarko Petroleum Corporation (Andarko). Working in natural gas fields adjacent to the Property, Gravitas Chief Executive Officer Jeffrey Clarke and Operations Vice President Douglas Endsley gained an "understanding of the Property's underlying natural gas field, reserve potential, operating-cost structure, and productive capacity." While assessing how to purchase the Property and other assets in the area, Gravitas learned the Property sat on substantial, underutilized natural gas reserves. It pieced together public and non-public data related to acreage abutting the Helper field and within the Drunkards Wash field that ConocoPhillips attempted to auction and confirmed the Property had significant additional reserves that could be extracted if approved, but undrilled, Infill Wells were drilled. "Through geologic and engineering studies and discussions with . . . field managers,"

Gravitas also gathered information about potential operational savings on the Property, learning about a "wealth of inefficiencies" in Andarko's operations, and estimated it could save a substantial amount in annual operating costs by cutting unnecessary expenses.

In June 2016, Gravitas approached Anadarko about making an offer for the Property. Anadarko provided Gravitas with data, including Anadarko's reserve data, information about Anadarko's gathering and processing systems, and profit and loss statements. On July 19, 2016, Gravitas submitted an $88 million bid to purchase the Property. Anadarko decided to test the strength of the bid through an auction. Gravitas responded by making a preemptive $102 million bid, but Anadarko declined. Anadarko hired the Oil and Gas Asset Clearinghouse (OGC) to run the auction, and OGC set up a public data room for all potential bidders. The data room, however, contained no information on either the "substantial potential of undrilled Infill Wells or the potential for reduced operating costs."

Its $102 million bid was the highest of multiple bids, and Gravitas began negotiating a purchase and sale agreement for the Property. At the same time, Gravitas was seeking additional funding for the purchase. It commissioned Ryder Scott Company, L.P. (Ryder Scott) to prepare a reserve report on the Property. Reserve reports are typically confidential; Ryder Scott's report provided it "was prepared for the exclusive use and sole benefit of Gravitas and may not be put to other use without our prior written consent for such use." Gravitas also retained RMK Maritime Capital, LLC (RMK) to contact prospective financers. RMK managing director Alan Pinto "provided prospects with a basic outline of the investment opportunity in a 'gas asset in the Northern Rockies,' including explanations of Gravitas's optimistic production and cost projections, as well as the favorable topline numbers" from Ryder Scott's report.

In February 2017, Pinto emailed Pearl Management associate William Dace and, without identifying the Property, provided a "high-level" description of the investment. Dace responded

that the "deal looks like something we could be interested in." Pinto asked that Pearl Management sign a non-disclosure agreement (NDA); entering into a NDA was Gravitas's "standard process" before sharing its confidential and sensitive information. Dace forwarded a Pearl Management form NDA. The terms of the NDA provided that Pearl Management agreed not to disclose Gravitas's "Confidential Information"[2] to any third party or use such information for its own benefit. Gravitas executed the NDA, outlining the Property and attaching a map, and returned it to Dace. Pearl Management never countersigned the NDA upon its return.

Gravitas and Pearl Management representatives, including Quinn, met on March 6, 2017. Pearl Management questions focused on the Property's potential. Gravitas "elaborated on the proprietary Ryder Scott Report's positive reserve and financial valuations" and provided significant information on its efforts to purchase the Property and the terms and structure of the proposed purchase; operating information about the Property, including information about pipeline infrastructure; Gravitas's plans to increase production and lower operating costs from the existing PDP Wells; Gravitas's plan, with regulatory approval, to drill more than 129 Infill Wells; Gravitas's assessment of the economic life of PDP and Infill Wells; and Gravitas's assessment of the Property's reserves based on its study of the Conoco assets. A few days after the meeting, however, Pearl Management advised Gravitas that the Property did not fit its "investment parameters."

---

[2] "Confidential Information" is explicitly defined to include, among other things:

> financial information, statistical information, geological information, geophysical information, engineering information, operating information, technical information, . . . business plans, quality assessment, identify of investors, limited partners or joint venture partners, projects in which [Gravitas] is currently engaged, or in which it proposes to engage, or the identity of those entities which might form the basis for possible projects with [Gravitas] based upon [Gravitas's] business plan, [Gravitas's] business plan or ideas (whether past, current or planned), business forms, forms of contracts, oil and gas reserve information regarding [Gravitas], its projects, or associated with possible projects, or entities with which [Gravitas] may engage in projects, and any other information relating to [Gravitas] that has been or may hereafter be provided or shown to [Pearl Management] by [Gravitas] . . . .

In April 2017, Gravitas advised Andarko it expected to have a financing commitment soon; Anadarko indicated it was considering a sale to other potential buyers. On May 14, 2017, Gravitas advised Anadarko that it "was ready to move forward with purchasing the Property." Anadarko replied that it recently signed a purchase and sale agreement with another group, which Gravitas learned was AVAD, the Pearl Management portfolio company.[3]

Appellees allege the Pearl defendants disclosed Gravitas's private and confidential information about the Property to AVAD and "AVAD – armed with the information . . . – short-circuited Gravitas's years of study and assessment of the Property, and structured a bid for the Property using Gravitas's confidential and proprietary information." Gravitas asserted causes of action for breach of the NDA, violations of the Texas Uniform Trade Secrets Act, unfair competition by misappropriation, tortious interference with contractual relations, tortious interference with prospective business relations, common law fraud, aiding and abetting common law fraud, and unjust enrichment.[4] Pinto asserted common law fraud, aiding and abetting common law fraud, unjust enrichment, and tortious interference with contractual relations causes of action.

Appellants filed motions to dismiss all of appellees' claims under the TCPA. Appellants contend all of the claims are based on allegations the Pearl defendants obtained confidential information from appellees and improperly communicated that information to AVAD. According to appellants, the TCPA applies because the communications were (1) an exercise of their right of association because appellees allege appellants joined together to pursue their common interests to the detriment of Gravitas, and (2) an exercise of their right of free speech because the

---

[3] The petition alleges AVAD had been seeking to purchase the Property since September 2016.

[4] Specifically, Gravitas asserted breach of the NDA against Pearl Management; violations of the Texas Uniform Trade Secrets Act against the Pearl defendants and AVAD; unfair competition by misappropriation against the Pearl defendants and AVAD; tortious interference with contractual relations against Pearl Fund, AVAD, and Quinn; tortious interference with prospective business relations against the Pearl defendants and AVAD; common law fraud against Pearl Management and Quinn; aiding and abetting common law fraud against Pearl Fund and AVAD; and unjust enrichment against AVAD. Pinto asserted common law fraud against Pearl Management and Quinn; aiding and abetting common law fraud against Pearl Fund and AVAD; unjust enrichment against AVAD; and tortious interference with contractual relations against Pearl Fund, AVAD, and Quinn.

purportedly confidential information related to matters of public concern. Appellants further contend the TCPA requires dismissal of the claims and an award of attorneys' fees, costs, and sanctions to appellants because appellees did not put forth "clear and specific evidence" of each element of their claims. Following a hearing on appellants' motions to dismiss, the trial court denied the motions.

## TCPA

"The TCPA's purpose is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding). Specifically, the legislature enacted the TCPA to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *See* Civ. Prac. & Rem. § 27.002; *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).

The TCPA sets out a two-step procedure to expedite the dismissal of applicable claims. Civ. Prac. & Rem. §§ 27.003(a), .005(b); *Coleman*, 512 S.W.3d at 898. First, a movant seeking dismissal under the TCPA bears the burden of showing by a preponderance of the evidence that the legal action is based on, relates to, or in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. Civ. Prac. & Rem. § 27.005(b); *see also S & S Emergency Training Solutions, Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant shows the TCPA applies to the non-movant's legal action, the burden shifts to the non-movant to establish by clear and specific evidence a prima facie case for each essential element of its claims. Civ. Prac. & Rem. § 27.005(c); *Elliott*, 564 S.W.3d at 847. If the non-movant satisfies this requirement, the trial court must still dismiss a claim if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the [non-movant's]

claim." CIV. PRAC. & REM. § 27.005(d); *see Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018).

To determine whether a legal action should be dismissed, the trial court considers "the pleadings and supporting and opposing affidavits stating the facts on which liability or defense is based." CIV. PRAC. & REM. § 27.006(a); *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). However, a plaintiff's pleadings are usually "the best and all-sufficient evidence of the nature of the action." *Hersh*, 526 S.W.3d at 467 (quoting *Stockyards Nat'l Bank v. Maples*, 95 SW.2d 1300, 1302 (Tex. 1936)).

We review de novo a trial court's ruling on a TCPA motion to dismiss. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). In doing so, we consider the pleadings and supporting and opposing affidavits in the light most favorable to the non-movant. *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *5 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.).

Whether the TCPA applies to a non-movant's claims is an issue of statutory interpretation that we also review de novo. *Youngkin*, 546 S.W.3d at 680. We construe the TCPA "liberally to effectuate its purpose and intent fully." CIV. PRAC. & REM. § 27.011(b); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018). "[W]e ascertain and give effect to the Legislature's intent as expressed in the language of the statute," *see Harper*, 562 S.W.3d at 11, and construe the statute's words "according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680. As directed by the supreme court, we must adhere to the definitions in the TCPA. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Youngkin*, 546 S.W.3d at 680. However, in the process of applying "isolated" definitions, we are required to

construe those individual words and provisions in the context of the statute as a whole. *Youngkin*, 546 S.W.3d at 680.

ANALYSIS

Appellants contend the trial court erred in denying their TCPA motions to dismiss because they satisfied their initial burden of showing by a preponderance of the evidence that appellees' legal action is based on, relates to, or in response to appellants' exercise of their rights of association and free speech. The TCPA's definitions of both exercise of the right of association and exercise of the right of free speech require a communication, which includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *See* CIV. PRAC. & REM. §§ 27.001(1)–(3). Here, appellants assert all of appellees' claims are based on and relate to the Pearl defendants' alleged communications to AVAD of confidential information disclosed by Gravitas under the NDA.

*Right of Association*

The TCPA defines "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." CIV. PRAC. & REM. § 27.001(2); *see also Kawcak v. Antero Res. Corp.*, No. 02-18-00301-CV, 2019 WL 761480, at *5–6 (Tex. App.—Fort Worth Feb. 21, 2019, pet. denied). Appellants assert the communications of Gravitas's confidential information satisfies the TCPA's association prong because the communications were in furtherance of appellants' business enterprises and, specifically, the following common interests alleged in appellees' petition: "Pearl Management 'directly benefitted' from communicating with AVAD about the Property, given Pearl Management's relationship with Pearl Fund as its 'investment manager;' that Pearl Management and Mr. Quinn 'knew that Pearl Fund's partner, AVAD, was pursuing the same Property;' that Pearl Energy 'shared the information they gained' from Appellees 'with AVAD so

–8–

that AVAD could purchase the Property for the benefit of its partner the Pearl Fund;' and that AVAD and Pearl Fund together 'benefitted from' the purportedly 'ill-gotten confidential information.'"

This Court, however, has held that, "to constitute an exercise of the right of association under the [TCPA], the nature of the 'communication between individuals who join together' must involve public or citizen's participation." *See Dyer*, 573 S.W.3d at 426 (concluding TCPA's protection of the right of association did not apply to claims for misappropriation of trade secrets, conversion, and tortious interference based on communications between alleged tortfeasors with a common interest in a competing business enterprise). Appellants have not shown the communications of Gravitas's confidential information involved any public or citizen participation. Construing the TCPA to find a right of association simply because there are communications between parties with a shared interest in a private business transaction does not further the TCPA's purpose to curb strategic lawsuits against public participation. *See id*. at 426–27; *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 847, *rev'd on other grounds*, 512 S.W.3d 895 (in light of TCPA's purpose, "it would be illogical for the [TCPA] to apply to situations in which there is no element of public participation"). Accordingly, we conclude appellants failed to establish by a preponderance of the evidence that appellees' claims are based on, relate to, or are in response to appellants' exercise of a right of association as defined by the TCPA. *See Dyer*, 573 S.W.3d at 426–27.

*Right of Free Speech*

Under the TCPA, the "exercise of the right of free speech" is "a communication made in connection with a matter of public concern." CIV. PRAC. & REM. § 27.001(3). A "matter of public concern" may include an issue related to health or safety, environmental, economic, or community well-being, the government, a public official or public figure, or a good, product, or service in the

marketplace. *Id*. § 27.001(7). Appellants contend their communication of Gravitas's confidential information to AVAD was made "in connection with" matters of public concern because the confidential information addressed (1) the "efficient use" and "full development" of natural resources on the Property, environmental and economic interests shared by appellants, the local community, and oil and gas lease holders, which included government entities, (2) Property operations, including pipeline infrastructure and "chemically treat[ing] wells inefficiently," which are "at least tangentially related to" safety, environmental, and economic interests, (3) issues related to the Property's regulatory status, and (4) services in the marketplace.[5]

The TCPA does not require that communications specifically "mention" a matter of public concern or have more than a "tangential relationship" to such a matter, but the statute applies so long as the movant's statements are "in connection with" "issue[s] related to" any of the matters of public concern listed in the statute. *Coleman*, 512 S.W.3d at 900. Private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). But, the TCPA "has its limits" and not every communication falls under the statute. *See Dyer*, 573 S.W.3d at 428 (citing *In re IntelliCentrics, Inc.*, No. 02-18-00280-CV, 2018 WL 5289379, at *4 (Tex. App.—Fort Worth Oct. 25, 2018, orig. proceeding)).

For example, in *Dyer*, this Court considered whether appellants Dyer and Basiti were exercising their right of free speech in text messages discussing misappropriating, selling, and using proprietary software and other confidential information of the appellee healthcare management services company. *Id*. at 427–28. The text messages did not discuss issues related to health or economic well-being other than the appellants' own financial interests. *Id*. Further,

---

[5]   AVAD contends that, because the confidential information also discussed Andarko's overpayment for "midstream services–including services related to gathering and transporting extracted natural gases," the communications also "patently relate to a 'service in the marketplace.'"

the appellee had taken specific steps to protect the proprietary software and other confidential information and keep it private. *Id*. at 428. Under the circumstances, this Court determined it could not conclude the communications were tangentially related to a matter of public concern simply because the information belonged to a company in the healthcare industry or the appellants hoped to profit from their tortious conduct. *Id*.

In *Pinghua Lei v. Natural Polymer International Corp.*, an employer manufacturer and distributor of natural pet treats brought an action against former employees for breach, misappropriation of trade secrets, unfair competition by misappropriation, and conversion because the former employees disclosed proprietary and trade secret information to a direct competitor. No. 05-18-01041-CV, 2019 WL 2559756, at *2 (Tex. App.—Dallas Jun. 21, 2019, no pet. h.). The former employees filed a TCPA motion alleging the communications "were made 'in connection with no fewer than three matters of public concern': (1) 'natural' pet treats that 'promote ... health'; (2) 'economic well-being of [the employer] relative to [the competitor]'; and (3) a good or product in the marketplace. *Id*. at *6. As in *Dyer*, the employer "had taken specific steps to protect and keep private" the proprietary and trade secret information. And, as in *Dyer*, this Court was unable to conclude "the alleged 'communications' [were] tangentially related to a matter of public concern simply because the proprietary and confidential information at issue belonged to a company in the business of selling pet treats that promote health 'or because the alleged tortfeasors hoped to profit from their conduct.'" *Id*. Accordingly, the Court held the former employees failed to establish by a preponderance of the evidence that the employer's claims were based on, related to, or in response to the former employees' exercise of the right of free speech as defined by the TCPA. *Id*.

This Court's reasoning in *Dyer* and *Pinghua Lei* mandates the same result here. With an eye towards purchasing the Property and other assets in the area, Gravitas compiled significant

public and non-public data and analyses related to the Property's value, production, underutilized reserves, and the potential for operational savings and increased revenue. Gravitas used the information in bidding on the Property and obtaining financing for the purchase – all private business transactions. In doing so, Gravitas and Pinto took steps to protect and keep the information private. The Pearl defendants' alleged subsequent disclosure of the information to AVAD was made in connection with AVAD's efforts to purchase the Property, also a private business transaction, and appellants' private economic interests in the purchase. As in *Pinghua Lei*, we cannot conclude that the communications alleged in this case are tangentially related to a matter of public concern simply because the proprietary and confidential information disclosed to AVAD belonged to a company in the business of oil and gas production or because appellants hoped to profit from their conduct. *See id*. at *6. Thus, we conclude appellants failed to establish by a preponderance of the evidence that appellees' claims are based on, related to, or are in response to appellants' exercise of their right of free speech as defined by the TCPA.

Because appellees' lawsuit does not implicate appellants' "constitutional rights . . . to petition, speak freely, associate freely, and otherwise participate in government," *see* Civ. Prac. & Rem. § 27.002, we overrule the Pearl defendants' first, second, third, and fourth issues and AVAD's first and second issues. Accordingly, we need not address the following matters raised in the Pearl defendants' fifth, sixth, and seventh issues and AVAD's third and fourth issues: whether the TCPA's commercial speech exemption applies; whether appellees established by clear and specific evidence a prima facie case for each essential element of its claims against appellants; whether AVAD proved its independent discovery defense by a preponderance of the evidence; or whether appellants were entitled to an award of attorney's fees, costs and an award of sanctions. *See Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 287 (Tex. App.—Dallas 2015, pet. denied)

(because appellant failed to meet its burden of showing TCPA applied to appellees' claim, appellate court need not address other prongs of TCPA analysis).[6]

We affirm the trial court's order denying appellants' motions to dismiss pursuant to the TCPA.

/Ada Brown/
ADA BROWN
JUSTICE

181012F.P05

---

[6] We also have not addressed the argument raised in appellees' brief that we can affirm the trial court's ruling because appellants failed to address a potential ground on which the trial court could have denied their motions to dismiss. In response to the motions, appellees argued a TCPA dismissal in this case would violate the open courts and due course guarantees of the Texas Constitution because appellants violated a rule 11 agreement by producing heavily redacted documents without asserting claims of privilege and, with respect to AVAD, failing to search for backups of deleted emails. The clerk's record, however, does not contain a motion to compel filed by appellees. The docket sheet shows a motion to compel was filed on August 3, 2018, but also indicates a hearing on the motion was taken off the docket for lack of a proper three-day notice. Because appellees did not obtain a ruling on a motion to compel in the trial court, it waived its argument that the discovery violations were an independent ground on which the trial court could have denied appellants' motions to dismiss. *See* TEX. R. APP. P. 33.1(a)(1) (providing that, to preserve error, party must present complaint to trial court via timely objection or request and obtain a ruling); *see, e.g., Mayfield v. Fullhart*, 444 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (failure to obtain ruling on discovery dispute waives challenge to summary judgment on ground movant did not adequately respond to discovery request); *see also Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 84 (Tex. App.—Texarkana 2008, pet. denied).

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PEARL ENERGY INVESTMENT
MANAGEMENT, LLC, PEARL ENERGY
INVESTMENTS, L.P., WILLIAM
QUINN, AND AVAD ENERGY
PARTNERS, LLC, Appellants

No. 05-18-01012-CV      V.

GRAVITAS RESOURCES
CORPORATION AND ALAN PINTO,
Appellees

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-03007.
Opinion delivered by Justice Brown;
Justices Schenck and Pedersen, III
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees GRAVITAS RESOURCES CORPORATION AND
ALAN PINTO recover their costs of this appeal from appellants PEARL ENERGY
INVESTMENT MANAGEMENT, LLC, PEARL ENERGY INVESTMENTS, L.P., WILLIAM
QUINN, AND AVAD ENERGY PARTNERS, LLC.


Judgment entered this 7th day of August, 2019.

–14–