**Affirmed and Memorandum Opinion filed June 3, 2021.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-19-00896-CV

## IN THE MATTER OF THE MARRIAGE OF SHAWNDELL ALICIA HULTQUIST AND PAUL COOK

**On Appeal from the 312th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-74844**

## M E M O R A N D U M   O P I N I O N

Shawndell Alicia Hultquist and Paul Cook filed petitions for divorce. After a bench trial, the trial court entered a final decree of divorce and Cook appealed. For the reasons below, we affirm.

### BACKGROUND

Hultquist and Cook were married in May 2011. In October 2018, Hultquist filed an original petition for divorce. Cook filed an answer and an original counterpetition for divorce.

The parties proceeded to a bench trial in September 2019. The trial court signed a final decree of divorce on November 1, 2019, and dissolved the parties' marriage "on the grounds of insupportability and cruelty by [Cook] against [Hultquist]." The trial court's final decree of divorce also rendered a division of the parties' assets and liabilities. Neither party requested findings of fact and conclusions of law. Cook timely appealed.

ANALYSIS

Cook raises the following issues on appeal:

1.  The trial court erred "in not acting on [Cook's] Emergency Motion to Amend Temporary Orders to allow him to access the former matrimonial domicile."

2.  The trial court erred by denying Cook's "Motion to Appoint Real Estate Appraiser and Personal Property Appraiser."

3.  The trial court erred "in not applying basic fairness to [Cook] with regard to the discovery process and specifically the Trial Court Erred by not applying Local Family Trial Division Court Rule 4.4 . . . which imposes a duty of Disclosure on all litigants without a discovery request."

4.  The trial court's division of the parties' assets constitutes an abuse of discretion.

5.  The trial court erred "in making an award of attorney's fees against [Cook] on three separate occasions."

We begin by considering together Cook's first and second issues.

I.  **Cook's Motion to Amend Temporary Orders and Motion to Appoint Real Estate Appraiser and Personal Property Appraiser**

Cook raises issues challenging the trial court's disposition of his "Emergency Motion to Amend Temporary Orders" and "Motion to Appoint Real Estate Appraiser and Personal Property Appraiser." A review of the clerk's record shows that neither of these motions are included in the record.

2

Although Texas Rule of Appellate Procedure 35.3(a) requires the trial court clerk to timely prepare, file, and certify the clerk's record, appellants bear the burden to bring forward an appellate record that permits us to determine whether the complaints raised on appeal constitute reversible error. *See* Tex. R. App. P. 35.3(a); *see also Eagle Fabricators, Inc. v. Rakowitz*, 344 S.W.3d 414, 421 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The motions Cook references on appeal are not those that are automatically required to be included in the appellate record under Texas Rule of Appellate Procedure 34.5(a) and, despite it being his burden to do so, there is no indication Cook designated that those motions be included in the appellate record before us. *See* Tex. R. App. P. 34.5(a), (b); *see also Eagle Fabricators, Inc.*, 344 S.W.3d at 421. Without these documents, we cannot conclude whether the trial court's rulings (or the alleged failure to rule) on these motions constitutes error. *See Eagle Fabricators, Inc.*, 344 S.W.3d at 421; *see also Wylie v. Simmons*, No. 02-19-00241-CV, 2020 WL 7776796, at *20 (Tex. App.—Fort Worth Dec. 31, 2020, pet. filed) (mem. op.) (where appellants did not include motion to compel in appellate record, they could not show the trial court's ruling on the motion was in error); *Mayfield v. N. Vill. Green I Homeowner's Ass'n, Inc.*, No. 01-12-00748-CV, 2014 WL 2538554, at *3 (Tex. App.—Houston [1st Dist.] June 5, 2014, pet. denied) (mem. op.) ("[b]ecause she did not include her motion for default judgment in the record, [appellant] cannot show the trial court erred by denying it").

We note that Cook included unofficial copies of these motions in the appendix to his appellate brief. However, an appellate court cannot consider documents attached to briefs and must examine the case based solely on the record filed. *See Watamar Holdings S.A. v. SFM Holdings, S.A.*, 583 S.W.3d 318, 328 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Therefore, we may not rely on

the documents included in Cook's appendix to revisit the trial court's rulings on the motions Cook seeks to address on appeal.

We overrule Cook's first and second issues.

## II.      Local Family Trial Division Court Rule 4.4

In his third issue, Cook contends the trial court erred by not applying Family Trial Division Rule 4.4,[1] which requires parties to a divorce proceeding to provide each other certain property and financial information. Our review of the record does not show that Cook raised this issue in the trial court.

To preserve error on a discovery dispute, the appealing party must obtain a ruling by the court on the particular discovery issue the party seeks to address on appeal. *See* Tex. R. App. P. 33.1(a)(1)(A) (to preserve error for appellate review, a party must present the complaint to the trial court via a timely objection or request and obtain a ruling thereon); *see also Badall v. Durgapersad*, 454 S.W.3d 626, 642 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Mayfield v. Fullhart*, 444 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Failure to do so waives the issue for appellate review. *See, e.g., Badall*, 454 S.W.3d at 642 (the appellant's complaint that the appellee failed to produce certain discovery information was waived because the appellant "did not present this argument to the trial court"); *Mayfield*, 444 S.W.3d at 226 (the appellant's argument that the appellees failed to respond to her discovery requests was waived where the record did not show she raised this issue in the trial court and received a ruling).

Here, because the record does not show that Cook raised his Family Trial Division Rule 4.4 argument in the trial court and received a ruling, this complaint is waived. *See* Tex. R. App. P. 33.1(a)(1)(A); *see also Badall*, 454 S.W.3d at 642;

---

[1] *See* Rules of the Judicial District Courts of Harris County, Texas, Family Trial Division, https://www.justex.net/Courts/Family/LocalRules.aspx (last visited May 3, 2021).

*Mayfield*, 444 S.W.3d at 226.  We overrule Cook's third issue.

## III.    Trial Court's Division of Property

Cook's challenge to the trial court's property division raises three arguments:

1.    "The docket entry indicates that the judge found the marriage 'insupportable' indicating a no fault divorce then goes on further to state that he found [Cook] at 'fault' for cruelty . . . .  No evidence of cruelty was ever adduced at trial therefore anything other than a 50/50 split was error and an abuse of discretion."

2.    "The Court made a finding of waste where there was no testimony about any of the items regarding waste.  All that was submitted was a spreadsheet indicating credit card charges for dinners and other causal spending."

3.    "The Court made a ruling on the value of the family home based on the tax value not any of the comparables submitted by [Cook] which were proffered at trial and showed the property to be significantly higher in value and failing to admit these comparables as evidence."

We consider these arguments separately.

### A.    Fault

The trial court's final decree of divorce states that the parties' marriage "is dissolved on the grounds of insupportability and cruelty by [Cook] against [Hultquist]."  We construe Cook's first argument as challenging the trial court's finding regarding cruelty as well as its subsequent division of the marital estate.

#### 1.    Standard of Review and Governing Law

In a divorce proceeding, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage."  Tex. Fam. Code Ann. § 7.001.  On appeal, we review the trial court's division of community property for

an abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *Quijano v. Quijano*, 347 S.W.3d 345, 349 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Assessments of the legal and factual sufficiency of the evidence are not independent grounds for reversal but are relevant factors in assessing whether the trial court abused its discretion. *Quijano*, 347 S.W.3d at 349. "To prevail on a complaint about the division of property, an appellant has the burden of demonstrating based on the evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion. *In re Marriage of O'Brien*, 436 S.W.3d 78, 82 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The division of the parties' estate need not be equal, and fault is one of the factors a trial court may consider in dividing the community estate. *Kaley v. Kaley*, No. 14-17-00768-CV, 2019 WL 2097490, at *3 (Tex. App.—Houston [14th Dist.] May 14, 2019, no pet.) (mem. op.). "Generally, in a fault-based divorce, the court may consider the conduct of the errant spouse in making a disproportionate distribution of the marital estate." *Id*. The grounds available for a fault-based divorce include cruelty. *See* Tex. Fam. Code Ann. § 6.002. "To be considered cruel treatment, the conduct of the accused spouse must rise to such a level that it renders the couple's living together insupportable." *In re Marriage of Garcia*, No. 14-17-00444-CV, 2019 WL 1523483, at *7 (Tex. App.—Houston [14th Dist.] Apr. 9, 2019, no pet.) (mem. op.). Insupportability is defined in the Texas Family Code as a state in which the legitimate ends of the marital relationship have been destroyed and where any reasonable expectation of reconciliation is prevented. Tex. Family Code Ann. § 6.001.

### 2. Evidence and the Trial Court's Division of the Marital Estate

Cook was the first witness to testify at the bench trial. According to Cook, he previously had worked as a schoolteacher and resigned from his position after

he tested positive for drugs. Cook testified that he currently was working as a carpenter and living with his mother. Cook said his mother pays for all his bills, including the attorney's fees incurred in the divorce proceeding.

Describing himself as a "recovering addict," Cook said he previously had used marijuana, cocaine, amphetamines, and methamphetamines. Cook also testified that he previously had bought "fake urine" to "cheat a [drug] test." When asked if he was in a drug recovery program, Cook said he is "working on the steps." According to Cook, Hultquist knew that Cook had a "drug dependency" when they first met.

Cook testified that he previously was involved in a "modification case"; the "modification case" appears to reference a court proceeding to change Cook's custody or visitation arrangements with respect to his child from a prior relationship. Cook said he had "no idea" how much his attorney in the modification case was paid. An exhibit admitted into evidence during Cook's testimony showed he owed approximately $11,000 for legal representation in connection with the modification case. When asked why he did not provide any additional information with respect to the modification case, Cook said "I never made any effort to do that. Sorry."

Cook acknowledged owing $12,000 in credit card debt. Cook also testified that he did not have an affair while married to Hultquist but said he previously had created a profile on a dating website and listed his marital status as "single."

According to Cook's testimony, he failed to produce a substantial amount of information regarding assets relevant to the divorce proceeding including: (1) a sworn inventory and appraisal; (2) the amount of money in his retirement account; (3) information and appraisals with respect to the community's three vehicles; and (4) the valuation of his carpentry business.

7

At the time of trial, Cook said he had not contributed to the marital home's mortgage payments for approximately six months. Cook testified that he nonetheless was "asking this [trial] court to award [him] the marital home." Cook acknowledged that he did not have a "source of constant income" but said his mother would pay for the home's costs. Cook also requested that he receive $500 in monthly spousal maintenance from Hultquist.

Hultquist was the second witness to testify at the bench trial. Hultquist said she works in a law office and earns approximately $17-20 an hour. Hultquist requested that the trial court dissolve her marriage on grounds of cruelty. To support this request, Hultquist said Cook would call her derogatory names, including "bitch" and "gold-digging whore." Hultquist said Cook previously had conversations with her in which he "made some admissions about relationships he has with other people." Hultquist also said that, "[i]f [she] didn't have sex with [Cook], he would get really mad and angry." According to Hultquist, Cook had called her a few days before trial "screaming" at her and telling her she "had to take his deal or else."

Hultquist said Cook incurred $11,000 in attorney's fees in the modification case. Hultquist testified that these fees were a "waste" because Cook "knew he was a drug addict" when he was litigating the case. According to Hultquist, she discovered during the modification case that Cook was "smoking meth" when, during Cook's testimony, the questioning attorney introduced Cook's positive drug test results. Hultquist estimated that Cook spent approximately $10,000 on drugs throughout their marriage.

Hultquist said she had been paying the mortgage on the marital home for two years and asked the trial court that she be awarded the home in the property division. Admitted during Hultquist's testimony was the Harris County Appraisal

District's 2019 valuation of the marital home, which set the home's value at $299,000. To offset her retention of the marital home, Hultquist offered to pay Cook $25,000.

Hultquist estimated that Cook's retirement account contained "about $50,000" since Cook had worked as a schoolteacher for twelve years. Also admitted into evidence was Hultquist's inventory and financial information statement valuing the parties' assets and liabilities.

After the parties rested, the trial court signed a final decree of divorce and rendered the following disposition of the parties' property, assets, and liabilities:[2]

| **Property to Hultquist:** | **Property to Cook:** |
|---|---|
| • The parties' marital home ($299,000). | • Tools, tables, and shop items in the marital home's garage ($50,000). |
| • Household furniture, fixtures, and goods save and except Cook's personal items in the garage and attic ($7,418.10). | • All of his retirement accounts (in her testimony, Hultquist estimated these accounts totaled $50,000). |
| • All sums of cash in her possession ($1,400). | • All sums of cash in his possession ($333.43). |
| • A 2016 Nissan Pathfinder and a 2016 Nissan Rogue (vehicles' net equity valued at $32,062). | • A 2018 Nissan Titan (vehicle's net equity valued at $40,193). |

---

[2] The valuations of the properties and debts contained in parentheses are based on Hultquist's exhibits admitted during trial, including her "Inventory and Appraisement."

**Debts to Hultquist:**
- The balance due on the promissory note on the marital home ($111,853.82).
- Balances owed on two credits cards ($1,451).

**Debts to Cook:**
- $11,000 incurred in attorney's fees in the modification case.

The trial court's final decree of divorce imposed a judgment lien on the marital home to secure a $57,650 "equalization payment" from Hultquist to Cook. The divorce decree also awarded Hultquist $9,250 in attorney's fees, with $1,750 of that amount attributable to fees and costs incurred during the parties' "discovery dispute."

### 3. Application

Here, the evidence in the record supports the trial court's dissolution of Cook's and Hultquist's marriage on grounds of cruelty.

Hultquist testified that Cook would call her derogatory names and tell her he was having relationships outside of their marriage; as a result of his treatment, Hultquist testified that her hair was falling out, she got stress rashes, and she developed high blood pressure. Hultquist testified that Cook denied using drugs until he was confronted with positive drug test results while testifying in the modification case. Hultquist estimated that Cook spent approximately $10,000 on drugs through the marriage. The trial court, as the trier of fact, reasonably could have relied on this testimony to conclude that Cook's conduct rose to such a level that rendered the parties' living together insupportable. *See* Tex. Fam. Code Ann. § 6.002; *In re Marriage of Garcia*, 2019 WL 1523483, at *7.

This finding regarding cruelty also supports the trial court's disproportionate division of the community estate. *See Kaley*, 2019 WL 2097490, at *3. Based on

the evidence admitted at trial, the property and debts distributed to Hultquist equal approximately $226,000. The property and debts distributed to Cook (including the payment from Hultquist secured by a lien on the marital home) equal approximately $177,000. This difference is not punitive, particularly since Cook testified that he deliberately failed to produce a substantial amount of information regarding assets relevant to the divorce proceeding. Cook also testified that he receives a substantial amount of financial support from his mother, which would further lessen the impact from the unequal division of the parties' community estate. *See Murff*, 615 S.W.2d at 699 (in dividing the parties' community estate, the court may consider the parties' relative financial conditions); *see also, e.g., Halleman v. Halleman*, 379 S.W.3d 443, 453 (Tex. App.—Fort Worth 2012, no pet.) (concluding the trial court's division of the community estate did not constitute an abuse of discretion, the court noted that wife's mother (1) purchased a home for wife, (2) made the home's monthly mortgage payments, and (3) paid wife's legal fees in the divorce proceeding).

We conclude the trial court's division of the parties' community estate is not "so unjust and unfair" as to constitute an abuse of discretion. We overrule Cook's challenge to the trial court's division.

### B. Waste

Cook's second argument challenges the trial court's "award for waste" and argues "there was no testimony or other non hearsay evidence to support such an award."

The trial court's final decree of divorce did not make any awards premised on "waste". Because this argument does not show any reversible error in the trial court's judgment, we overrule Cook's challenge on this point. *See* Tex. R. App. P. 44.1.

11

## C. Evidence of Marital Home's Value

Cook's third argument asserts the trial court's value of the marital home failed to take into account the "comparables submitted by [Cook]" that "showed the property to be significantly higher in value." Cook contends that "[t]he value listed was tax value not market value which the Court had before it but refused to have it admitted."

Before trial began, Cook's attorney referenced an exhibit he sought to admit that listed several homes sold in the area near the marital home and their list prices. Hultquist's attorney stated that she would not stipulate to the exhibit's admission. Cook's attorney did not seek to admit the exhibit into evidence during the bench trial.

To preserve error regarding the exclusion of evidence, the complaining party must actually offer the evidence and secure a ruling from the trial court. *See* Tex. R. App. P. 33.1; *In re Kahn*, 533 S.W.3d 387, 394 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (orig. proceeding). Here, the record does not show that Cook met these requirements. Therefore, we overrule his challenge on this point, and overrule his fourth issue.

## IV. Attorney's Fees

In his final issue, Cook contends "[t]he Trial Court erred in making an award of attorney's fees against [Cook] on three separate occasions as there was no basis therefore since all [Cook] ever sought was disclosure of financial information which is guaranteed by the local rules and state law and therefor [sic] for the Court to make such an award was manifest reversible error."

Aside from listing this argument in his "Points of Error", Cook does not raise any argument or cite any legal authority to support his contention that the trial

court's attorney's fee awards were in error.[3]  Thus, Cook waived this issue by failing to properly brief it.  *See* Tex. R. App. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").  We overrule Cook's fifth issue.

## V.        Sanctions

Finally, Hultquist requests in her appellee's brief that we "award damages in the form of attorney's fees" on grounds that Cook's appeal "was filed to delay the award made by the trial court [and] harass and annoy [Hultquist]."

If we determine that an appeal is frivolous, we may, on the motion of any party or on our own initiative, award the prevailing party "just damages".  *See* Tex. R. App. P. 45.  "To determine whether an appeal is frivolous, we review the record from the viewpoint of the advocate and decide whether the advocate had reasonable grounds to believe the case could be reversed."  *Glassman v. Goodfriend*, 347 S.W.3d 772, 782 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc).  We are not required to sanction every frivolous appeal; rather, the imposition of sanctions is a discretionary decision exercised with prudence and caution only after careful deliberation.  *Id.*  Sanctions are not appropriate when, despite the failure to convince us on appeal, the appellant's argument has a reasonable basis in law and constitutes a good-faith challenge to the trial court's judgment.  *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 657 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

After reviewing the record, we decline to award sanctions for a frivolous appeal.  We deny Hultquist's request for damages under Rule 45.

---

[3] Moreover, the trial court's final decree of divorce renders two attorney's fee awards in favor of Hultquist, rather than the three awards referenced in Cook's argument.

## CONCLUSION

We affirm the trial court's final decree of divorce.

/s/    Meagan Hassan
Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.